**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. "JAY"
BALLENTINE,

                Plaintiff,

      v.

DEVIN S. ANDERSON;
META PLATFORMS, INC.; and
CHRISTOPHER W. KEEGAN,

                Defendants.

CASE NO. 6:26-CV-00286-AGM-DCI

**DEFENDANTS DEVIN ANDERSON AND CHRISTOPHER KEEGAN'S**
**MOTION TO DISMISS ALL CLAIMS AGAINST THEM**

Defendants Devin Anderson and Christoper Keegan move to dismiss with

prejudice all claims asserted in the Second Amended Complaint against them pursuant

to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff does not state and cannot

state a claim against them as a matter of law.

**INTRODUCTION**

Plaintiff Marvelle J. Ballentine ("Plaintiff"), proceeding *pro se*, is abusing the

court system with baseless claims against attorneys for their advocacy on behalf of a

client in court filings.  Plaintiff's state-law tort claims are frivolous both because

Florida's litigation privilege clearly protects the alleged litigation conduct, and because

the allegations do not come close to satisfying Florida's high standards for the alleged

torts.  The only purpose this lawsuit serves is to harass Defendants Devin Anderson ("Anderson") and Christopher Keegan ("Keegan") (and collectively, "Defendants"). The Court should not allow this abuse of process.

Plaintiff admits that the at-issue statements come entirely from a motion to dismiss that Defendants filed on behalf of their client Accenture LLP ("Accenture") in one of Plaintiff's lawsuits in California federal court and from emails with Plaintiff relating to that representation.  There is no dispute that those statements were made exclusively as part of ongoing judicial proceedings in California.  And there can be no dispute that those statements are protected by Florida's litigation privilege.  It is both fundamental and well settled under Florida law that "litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings" precisely to "protect litigants and attorneys from liability for acts of defamation," like those alleged here.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004).  This Court should dismiss the claims against Defendants with prejudice because Plaintiff will never be able to assert a claim against Defendants based on their representation of Accenture.

Moreover, Plaintiff's claims should be dismissed because they fail to state a claim as a matter of law.  The alleged defamation is true speech made by attorneys about deficient allegations in a complaint.  It is not defamation to state in a court filing that the complaint is missing certain allegations.  It is not intentional infliction of emotional distress to ask a litigant to ensure that all counsel of record are copied on communications about a case.  Indeed, Plaintiff's tactic of filing a baseless lawsuit

against Accenture's attorneys in order to make it more difficult for Accenture to defend itself against Plaintiff's discrimination claims reveals Plaintiff's true purpose of harassment.   This Court should put a stop to these tactics and dismiss these claims with prejudice.

## BACKGROUND

### I.    Plaintiff Sues Meta and Accenture in California for Discrimination.

Last fall, Plaintiff sued Accenture and Meta Platforms, Inc. ("Meta") in the U.S. District Court for the Northern District of California (the "California Complaint"). *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025) (the "California Lawsuit"); Second Am. Compl. ("SAC") ¶ 17.[1] Anderson and Keegan from the law firm, Kirkland & Ellis LLP ("Kirkland"), represented Accenture as legal counsel in the California Lawsuit, and Plaintiff was *pro se. Id.* ¶¶ 3, 11, 13, 23.

Plaintiff alleged in the California Complaint that Meta terminated his Facebook advertising account because its content violated Meta's community standards by displaying content categorized as Child Sexual Exploitation ("CSE") material.  *Id.* ¶¶

---

[1]    The Court may properly consider the complaint and motions to dismiss filed in the California Lawsuit, as well as the email communications with Anderson and Keegan described in the Second Amended Complaint, without converting this motion into a motion for summary judgment. "[T]he Eleventh Circuit has crafted a limited exception to the conversion rule when the attached documents are central to the claim being considered and are undisputed." *Braxton Techs., LLC v. Ernandes*, 2010 WL 11623673, at *3 (M.D. Fla. Apr. 22, 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).  "A document is 'undisputed' when its authenticity is not challenged," and when it is "repeatedly referenced and [its] existence is a necessary part of [a party]'s case." *Id.* Here, these documents contain the statements Plaintiff alleges provide the bases for his claims, and Plaintiff repeatedly references them throughout the Second Amended Complaint. Accordingly, the Court may consider these exhibits in ruling on this motion to dismiss.  *See id.*

20, 21; Ex. 1 (Cal. Compl.) ¶¶ 94–161.  That was Plaintiff's allegation in his own complaint.  Plaintiff went on to assert, however, that the real reason Meta terminated his account was, not because it violated any community standards, but instead "to eliminate Black business owners from Facebook's digital marketplace."  Ex. 1 (Cal. Compl.) ¶ 1.  The California Complaint also alleged that Accenture—a service provider that supports Meta's content-moderation efforts—assisted Meta in reviewing Plaintiff's account.  *Id.* ¶¶ 7, 21.  The California Complaint asserted four discrimination-related claims against Accenture and Meta.  *See id.* ¶¶ 94–161.

**II.    Accenture's Motion to Dismiss Argues That Plaintiff Failed to Account for Alternative Non-Discriminatory Reasons for Plaintiff's Termination.**

Meta and Accenture filed separate motions to dismiss the California Complaint. In the section titled "Background," Accenture's motion to dismiss recounted the allegations in the California Complaint, including that, "[a]fter Accenture's review, Meta terminated Ballentine's account under its CSE policy."  Ex. 2 (Oct. 16 Mot. to Dismiss) at 3.  The motion also recited the legal standard for a dismissal motion pursuant to Federal Rule of Civil Procedure 12(b)(6): "Accenture accepts as true the factual allegations in the Complaint solely for the purposes of this motion to dismiss; Accenture does not otherwise concede the truth of any of those allegations."  *See id.* at 2 n.2.  The motion to dismiss then described the numerous bases warranting dismissal.

Of relevance here, the motion explained that each claim Plaintiff asserted against Accenture in the California Lawsuit required a showing of racial animus.  *See id.* at 7.  To make this showing, the California Complaint had to plausibly allege that,

4

"but for" racial discrimination, Plaintiff's account would not have been terminated. *See id.* at 10–11 (citing *Astre v. McQuaid,* 804 F. App'x 665, 667 (9th Cir. 2020) (affirming dismissal of a discrimination claim because the "allegations do not give rise to a plausible inference that [defendant's] alleged racially discriminatory actions caused the alleged impairment" given that "the 'complaint identifies independent non-discriminatory reasons for' the alleged impairment")).  The California Complaint did not plausibly allege that racial animus was the cause of Plaintiff's account termination because the California Complaint was silent on whether there were alternative, non-discriminatory reasons for the account termination.  The motion to dismiss stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint."  Ex. 2 (Oct. 16 Mot. to Dismiss) at 11.

One day after Accenture filed its motion to dismiss, Plaintiff amended his complaint.  A week later, Plaintiff emailed Anderson and Keegan to request that "Accenture consider including a footnote in its forthcoming motion [to dismiss the amended complaint] clarifying that it does not contend Plaintiff violated any child protection laws."  Ex. 3 (Oct. 24, 2025 email from J. Ballentine).  In response, Anderson explained that Accenture disagreed with Plaintiff's "characterization" of Accenture's first motion to dismiss: "We do not think that the motion suggested—explicitly or implicitly—that there was an actual violation of child protection laws." *See* Ex. 4 (Oct. 28, 2025 email from D. Anderson).  Anderson conveyed, nonetheless,

that in "Accenture's forthcoming motion to dismiss, and as a courtesy, we will include language reinforcing this point." *Id.*

Accenture then filed its motion to dismiss the amended complaint, stating: "An alternative explanation for Accenture's recommendation—a legitimate violation of another community standard ***unrelated to CSE***—is consistent with the facts alleged in the complaint. Ex. 5 (Oct. 31 Mot. to Dismiss) at 10 (emphasis added).

### III.    Plaintiff Abandons His California Lawsuit and Files a Series of Actions in Florida.

After Meta and Accenture fully briefed their motions to dismiss, and shortly before the California court was scheduled to hold argument on the motions, Plaintiff abandoned his California Lawsuit and refiled the exact discrimination claims initially raised in the California Complaint in this Court. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-RMN (M.D. Fla. Feb. 17, 2026).

Plaintiff separately filed the original complaint in this case on February 9, 2026, asserting defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED") claims against Meta, Accenture, Kirkland, and Anderson as counsel for Accenture. Compl., Dkt. 1. Three days later, Plaintiff amended the complaint to add Keegan as a defendant and alleged IIED and civil conspiracy against Keegan. First Am. Compl., Dkt. 4. After being instructed by the Court to affirm that neither Accenture nor Kirkland had partners in Florida for jurisdictional purposes, Plaintiff amended the complaint a second time to remove Accenture and Kirkland as defendants on March 4, 2026. *See* SAC.

Two days earlier, Plaintiff also filed an "omnibus" complaint in Florida state court asserting both the original discrimination claims from the California Complaint and the tort claims against all defendants, including Kirkland and Accenture, in state court. *See Ballentine v. Meta Platforms, Inc., et al.*, No. 35-2026-CA-000494 (Fla. Cir. Ct. Mar 2, 2026).

To date, Plaintiff has filed identical discrimination claims against Meta and Accenture in California federal court, Florida federal court, and Florida state court. Likewise, Plaintiff asserts the same tort claims against Anderson and Keegan in both Florida federal court and Florida state court.

## IV.    Plaintiff Asserts Tort Claims Against Accenture's Attorneys.

The operative Second Amended Complaint asserts three claims against Defendants: (1) defamation (libel), (2) civil conspiracy to defame, and (3) IIED.  SAC ¶¶ 73–106.  Plaintiff seeks compensatory damages in the amount of $100 million and costs. *Id.* at 22.

The allegations in this lawsuit are frivolous on their face.  Plaintiff alleges that Anderson defamed him in two different ways through Accenture's motion to dismiss filed in the California Lawsuit.  First, Plaintiff alleges that the motion to dismiss stated in part that "'a legitimate community standards violation by Ballentine—is consistent with the facts,'" which "conveyed to readers that Plaintiff engaged in a CSE violation or a child-protection-law violation warranting enforcement action."  *Id.* ¶¶ 76–77.  Second, Plaintiff alleges that the motion to dismiss "identified Plaintiff by name" and used the phrase "Child Sexual Exploitation" or "CSE" twenty-six times in the motion,

7

and Plaintiff's name "appeared in the same sentence as CSE-related terminology nine times," which was "defamatory by implication in that it conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action." *Id.* ¶¶ 17, 31, 56, 58, 75–77. Tellingly, Plaintiff admits throughout the Second Amended Complaint that the "publication" of the alleged defamatory statements occurred "in litigation." *Id.* ¶¶ 1, 3–4, 31–36, 50–51.

Plaintiff also asserts a claim for IIED based on these same allegedly defamatory statements and based on actions taken by Keegan as counsel for Accenture. *Id.* ¶¶ 97–106. Specifically, Plaintiff complains of two emails between Keegan and Plaintiff regarding the California Lawsuit. *Id.* ¶¶ 67, 69, 102. In the first email, Keegan informed Plaintiff that Anderson should be included in email communications regarding Accenture's defense of the California Lawsuit after Plaintiff did not include Anderson on case correspondence:

> On Tuesday, February 10th, 2026 at 11:28 AM, Keegan, Christopher <chris.keegan@kirkland.com> wrote:
>
> > Mr. Ballentine, Mr. Anderson continues to represent Accenture in these proceedings and you should continue to direct all communications to both Mr. Anderson and myself on behalf of Accenture. I have added him to this discussion.
> >
> > Chris
> >
> > Christopher W. Keegan, P.C.
> >
> > KIRKLAND & ELLIS LLP
> > 555 California Street, San Francisco, CA 94104
> > T +1 415 439 1882  M +1 415 238 6821
> > F +1 415 439 1500
> >
> > chris.keegan@kirkland.com

Plaintiff responded by removing Anderson from the email chain and stating that he

did not want to include Anderson because he is "a co-defendant" in this action:

From: Jay Ballentine <jayballentine@protonmail.com>
Sent: Tuesday, February 10, 2026 11:16 AM
To: Keegan, Christopher <chris.keegan@kirkland.com>
Cc: Visser, Michelle <mvisser@orrick.com>; Davis, Sarah <sdavis@orrick.com>
Subject: RE: Ballentine v. Meta Platforms, Inc. et al., No. 3:25-cv-07671-CRB – Proposed Stipulation to Continue Rule 12 Hearing

Mr. Keegan,

Thank you for your note. As a procedural matter, I do not intend to maintain direct communications with any named defendant in the Florida action.

The current representation structure, where Kirkland & Ellis LLP is a named defendant, Mr. Anderson is both a partner and a co-defendant, and both continue to represent co-defendant Accenture LLP, raises difficult boundary questions. At present, I will maintain communications with you alone in your capacity as counsel for Accenture, and reserve all procedural rights as this posture develops.

Best regards,

Marvelle J. "Jay" Ballentine

Plaintiff, pro se

Keegan responded by asking that Anderson be included on communications about the

California Lawsuit because Anderson was a notice attorney for Accenture:

On Tuesday, February 10th, 2026 at 12:17 PM, Keegan, Christopher <chris.keegan@kirkland.com> wrote:

Mr. Ballentine –

Notice attorneys include Mr. Anderson and myself, so please continue to include him on communications.

Chris

Christopher W. Keegan, P.C.

KIRKLAND & ELLIS LLP
555 California Street, San Francisco, CA 94104
T +1 415 439 1882  M +1 415 238 6821
F +1 415 439 1500

chris.keegan@kirkland.com

Keegan had no other communications directly with Plaintiff.  Based on these two emails, Plaintiff asserts that "Keegan engaged in intentional or reckless conduct" and "caused Plaintiff severe emotional distress."  *Id.* ¶¶ 102–03.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If the allegations are more conclusory than factual, the court need not assume their truth.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  Courts will dismiss a complaint where a plaintiff provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  A plaintiff must make factual allegations that "raise a right to relief above the speculative level," *id.*, and cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.  Although "[p]leadings from pro se litigants are held to a less stringent standard than pleadings drafted by attorneys," such pleadings still must meet the minimum pleading standards.  *Thomas v. Hillsborough Cnty. Sheriff's Off.*, 2021 WL 3930511, at *2 (M.D. Fla. Sept. 2, 2021) (citing *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994)).

## ARGUMENT

### I.    The Litigation Privilege Bars Plaintiff's Claims.

Plaintiff's claims should be dismissed because they arise from statements that are protected by Florida's litigation privilege.  When "the conduct in question is

10

inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit." *Jackson*, 372 F.3d at 1277. "The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *Cherdak v. Cottone*, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) (citation omitted). Litigation privilege is an affirmative defense that "may be considered in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (quoting *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988)). Here, the Second Amended Complaint affirmatively and clearly shows that (1) the conduct at issue is protected by the litigation privilege, and (2) the litigation privilege applies to the claims asserted by Plaintiff.

> **A.     The Litigation Privilege Extends to Statements Made in Court Filings and Related Correspondence with Attorneys.**

The face of the Second Amended Complaint clearly shows that Plaintiff's claims arise from statements related to the California Lawsuit. Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . *so long as the act has some relation to the proceeding*" because "participants in litigation must be free to engage in unhindered communication" and

"to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Jackson*, 372 F.3d at 1274 (emphasis added) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994)).

Here, Plaintiff complains of two types of statements made by Defendants. First, Plaintiff himself admits that the Second Amended Complaint "arises from … statements published … in federal court filings." SAC ¶ 1 (emphasis added). Specifically, Plaintiff alleges that Defendants made defamatory statements in Accenture's motion to dismiss when they argued that the California Complaint did not state a claim for racial discrimination. Because these statements were made in a pleading filed with the court in the California Lawsuit, they clearly fall within the litigation privilege. *See e.g., Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1313 (M.D. Fla. 2025) (determining that Florida's litigation privilege applies when the "defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court").

Likewise, to the extent Plaintiff's claims arise from the statements Keegan made (as counsel to Accenture) in email correspondence to Plaintiff (as the *pro se* plaintiff in the California Lawsuit), Florida's litigation privilege bars those claims, too, because they directly related to the California Lawsuit, discussing Accenture's representation by counsel (*i.e.*, "notice attorneys") in those judicial proceedings. *See Cherdak*, 2023 WL 2044608, at *5 (finding that email correspondence from counsel to a *pro se* litigant "clearly trigger[ed] the litigation privilege"); *Jackson*, 372 F.3d at 1276 ("[E]vents

12

taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings."). There can be no doubt that the litigation privilege extends to the statements at issue here.

### B.    The Litigation Privilege Applies to All Tort Claims Asserted.

The litigation privilege also clearly applies to all of the tort claims Plaintiff asserts here. Generally, courts have applied the privilege "to any tort or statutory cause of action based on false statements or other wrongful conduct." *Emergency Recovery, Inc.*, 773 F. Supp. 3d at 1312 (quoting *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017)). As relevant to Plaintiff's claims, alleged defamatory statements made in court filings are "categorically immune from liability under the litigation privilege doctrine." *United States v. Madison*, 2025 WL 3623726, at *10 (M.D. Fla. Dec. 15, 2025). Courts have also applied the privilege to bar claims of IIED. *See, e.g.*, *Cherdak*, 2023 WL 2044608, at *6 ("Litigation privilege immunizes acts done (or statements made) in connection with litigation from tort suits. Accordingly, this privilege extends beyond defamation claims to other tort claims, including intentional infliction of emotional distress."); *Medina Wright Berry Medina Wright v. Medina*, 2013 WL 12156046, at *7 (M.D. Fla. July 12, 2013) (dismissing claim for IIED on the basis that "the assertion of intentional infliction of emotional distress cannot be used to circumvent the immunity afforded to litigation conduct"); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of

action, those initiated pursuant to a statute, or of some other origin.").

Finally, Plaintiff's civil conspiracy claim fails because Plaintiff's defamation claim fails. "Florida law does not recognize an independent cause of action for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based." *Cherdak*, 2023 WL 2044608, at *7 (citing *Merchant One, Inc. v. TLO, Inc.*, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020)). Because Plaintiff asserts that the underlying tort for his civil conspiracy claim is defamation, Plaintiff's civil conspiracy claim should be dismissed as well. *See Rothenberg v. Knight Swift Transp.*, 2023 WL 3511271, at *5 (M.D. Fla. Feb. 7, 2023) ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim."); *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.,* 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("[I]f the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.").

The litigation privilege thus disposes of all of Plaintiff's claims against Defendants, and they should be dismissed with prejudice as a result.

## II.    Independently, the Court should Dismiss the Claims Against Defendants for Failure to State a Claim.

### A.    Plaintiff Does Not Allege Defamation.

In addition to being protected by the litigation privilege, Defendants' statements are not false and not defamatory. "To state a claim of defamation, the plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff."

*Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188 (M.D. Fla. 2022) (citation omitted).  "A false statement of fact is the *sine qua non* for recovery in a defamation action."  *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (citation omitted).  "Where the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'"  *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (footnote omitted).

Plaintiff fails to identify a statement that is false or defamatory.  Plaintiff alleges that Defendants defamed him by stating in a court filing that "[a]n alternative explanation for Accenture's recommendation [to terminate Ballentine's account]—a legitimate community standards violation by Ballentine—is consistent with the facts ***alleged in the complaint***."  Ex. 2 (Oct. 16 Mot. to Dismiss) at 11 (emphasis added); SAC ¶ 76.  Plaintiff omits the key phrase "alleged in the complaint" in his allegations in the Second Amended Complaint, but those are the operative words.  Accenture's motion to dismiss assessed—as all motions to dismiss must do—the allegations that Plaintiff set forth in his California Complaint and then argued that ***the California Complaint never alleged*** that Ballentine did not commit a community standards violation.  That is a completely normal argument in a motion to dismiss and is a true statement or, at most, an opinion about the public California Complaint that is "not actionable in a defamation suit."  *Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018) ("Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a

comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." (citation omitted)).  Importantly, the Second Amended Complaint never alleges that this statement in Accenture's motion to dismiss is false.

In addition, the motion's characterization of the California Complaint is not defamatory or harmful to Plaintiff.  The alleged defamatory statements describe what the California Complaint said (or did not say)—not what Plaintiff actually did with respect to his Facebook advertising account.  There is no reasonable defamatory interpretation of these statements in the context of a motion to dismiss filed as part of judicial proceedings to dismiss a complaint as a matter of law.  *See Hallmark Builders*, 733 F.2d at 1464 (dismissing defamation claims after finding that the alleged defamatory statements are "not susceptible to a defamatory interpretation").

Plaintiff also tries to make a defamation by implication claim, asserting that all the references in the motion to dismiss to "CSE" and CSE-related terminology in proximity to his name "conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action."  SAC ¶ 77. Whether a statement is defamatory by implication "turns on whether the 'gist' of the publication is false."  *Turner*, 879 F.3d at 1269 (citation omitted).  "In making this determination, [the factfinder] should consider the context in which the statement is made."  *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008).

The context of the motion to dismiss makes crystal clear that it is responding to the allegations that Plaintiff himself made in the California Complaint.  Indeed,

16

Plaintiff himself referenced CSE and CSE-related terminology *more than seventy times* in his own California Complaint. *See generally* Ex. 1 (Cal. Compl.). It is not defamatory—whether by implication or otherwise—for a motion to dismiss a complaint that mentions Plaintiff and CSE more than seventy times to also reference Plaintiff and CSE in the course of arguing that the California Complaint did not sufficiently state a claim for racial discrimination. It is ridiculous for Plaintiff to claim otherwise. These statements "could not possibly have a defamatory or harmful effect." *Rubin*, 271 F.3d at 1306.

Because Plaintiff has not sufficiently alleged that the statements in Accenture's motion to dismiss were false and defamatory, the Court should dismiss Plaintiff's defamation claim.

### B.    Plaintiff's Civil Conspiracy Claim Falls with His Defamation Claim.

As discussed above *supra* Part I.B., Plaintiff's claim that Defendants and Meta conspired to defame him fails because the underlying defamation claim fails. *See Button v. McCawley*, 2025 WL 50431, at *11 (S.D. Fla. Jan. 8, 2025) (determining that if "the count regarding the goal of the 'conspiracy' (defamation) fails, the conspiracy count fails too"); *Rothenberg*, 2023 WL 3511271, at *5 ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim.").

### C.    Plaintiff Does Not Sufficiently Allege Intentional Infliction of Emotional Distress.

Plaintiff's claim for IIED should also be dismissed because he does not sufficiently allege that Defendants engaged in "extreme and outrageous conduct," an

essential element of a claim for IIED.  *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012).  Under Florida law, "[c]onduct is considered 'outrageous' when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985)). Therefore, liability for IIED "does not extend to mere insults, indignities, threats or false accusations"—not even to "viscous verbal attacks."  *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (holding that conduct was not outrageous even though plaintiff was called racially derogatory terms at the workplace, was made to work in dangerous conditions, and was subject to false disciplinary actions and threats that he would be fired); *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (holding that conduct was not outrageous even though plaintiff was subject to "humiliating language, vicious verbal attacks, [and] racial epithets").  In fact, Florida courts have generally been "reluctant to find claims for [IIED] based solely on allegations of verbal abuse," given "the extremely high standard" imposed by Florida law.  *Lopez*, 676 F.3d at 1236–37 (quotation omitted). Nothing alleged in the Second Amended Complaint comes remotely close to meeting this standard.

At the outset, to the extent Plaintiff accuses Defendants of IIED based on the statements made in Accenture's motion to dismiss the California Complaint, such claim is barred by Florida's single action rule.  *See Cherdak*, 2023 WL 2044608, at *6

18

("[E]ven in the absence of litigation privilege, [plaintiff's] intentional infliction of emotional distress claim would still be improper because it is merely a restatement of his defamation claim."); *Patterson v. Meredith Corp.*, 2018 WL 11649577, at \*2 (M.D. Fla. Nov. 9, 2018) ("[I]t is clear that the IIED claims cannot continue because they are based on the same alleged defamation, thus running afoul of Florida's single action rule."). On this basis, the claims for IIED arising from the statements made in the motion to dismiss fail entirely.

Plaintiff's assertion that Keegan's emails constitute "extreme and outrageous" conduct also fails. Plaintiff alleges that Keegan's actions boil down to "twice adding Anderson to email communications with Plaintiff after Plaintiff had removed Anderson from the chain … with knowledge that Anderson is alleged to have caused Plaintiff severe emotional distress." SAC ¶¶ 102–03. Those allegations of normal litigation practice to maintain communication between counsel of record and a *pro se* Plaintiff do not rise to the level of a well-pleaded IIED claim. Plaintiff does not allege verbal abuse, let alone verbal abuse combined with physical abuse. Rather, the benign actions Keegan took were standard communications made between attorneys and a *pro se* attorney during the course of pending litigation proceedings—and "did not involve any obscenities, racial epithets, or threats of violence." *Id.* at 1237. Keegan's alleged conduct cannot be characterized as "extreme" or "outrageous," and it certainly is not sufficiently extreme and outrageous to "meet the extremely high standard erected by Florida's courts." *Id.*; *see also Martinez*, 422 F. Supp. 2d at 1296–97 (dismissing a claim for IIED even though employees of the defendant company

"repeatedly used racial slurs and delayed and inconvenienced [plaintiffs] while they delivered materials to the [defendant company]").  At bottom, the Second Amended Complaint fails to state a claim for IIED against Defendants.

### III.    The Claims Against Defendants Should Be Dismissed with Prejudice.

This Court should deny Plaintiff leave to amend because it would be futile. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) ("'[I]f a more carefully drafted complaint could not state a claim …, dismissal with prejudice is proper.'").  Because Florida's litigation privilege applies to all of Defendants' statements, Plaintiff "could not state a viable claim even if given an opportunity to file an amended complaint." *Cherdak*, 2023 WL 2044608, at *8; *see also Arthur-Rodger v. N. Tr. Co.*, 2025 WL 3620274, at *5 (M.D. Fla. Jan. 28, 2025) (dismissing complaint with prejudice because "[t]he litigation privilege covers other tortious behavior, including actions of the parties, beyond defamatory statements").

Furthermore, given Plaintiff's history of asserting frivolous claims against Defendants as well as against Defendants' client and law firm, dismissal with prejudice is particularly warranted here. *Brett v. Biden*, 2022 WL 5213317, at *2 (N.D. Fla. Sept. 1, 2022) ("Plaintiff's long and extensive history of asserting frivolous claims further indicates that Plaintiff is asserting frivolous claims in this civil action and that the appropriate action is dismissal with prejudice."), *report and recommendation adopted*, 2022 WL 5213029 (N.D. Fla. Oct. 5, 2022).  Claims are considered frivolous if they are "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).  Plaintiff's claims, which attack the very legal advocacy upon which

this Court relies, are the definition of frivolous. The Court should therefore dismiss the claims against Defendants with prejudice. *See Raghubir v. United States*, 2021 WL 12163926, at *2 (M.D. Fla. Oct. 20, 2021) ("The frivolous complaint and Plaintiff's numerous previous filings warrant dismissing the complaint with prejudice."), *report and recommendation adopted*, 2021 WL 12163948 (M.D. Fla. Dec. 6, 2021); *Jean-Baptiste v. United States Dep't of Just.*, 2024 WL 172753, at *2 (S.D. Fla. Jan. 3, 2024) ("Based upon Plaintiff's fantastical allegations in this Action and his pattern of frivolity in other cases, the Court dismisses this Action with prejudice."), *aff'd*, 2024 WL 4249655 (11th Cir. Sept. 20, 2024).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Defendants with prejudice.

Dated: March 18, 2026                    Respectfully submitted,


By:   /s/ *Marianna Chapleau*
      Marianna C. Chapleau (FBN. 1059142)
      Ariel D. Deitchman (FBN. 118163)
      Patrick Malone (FBN. 1051725)
      KIRKLAND & ELLIS LLP
      Three Brickell City Centre
      98 S.E. 7th St., Suite 700
      Miami, FL 33131
      Tel: (305) 432-5600
      Fax: (305) 432-5601
      mchapleau@kirkland.com
      ariel.deitchman@kirkland.com
      patrick.malone@kirkland.com

      Lauren M. Spiwak (*pro hac vice
      forthcoming*)
      KIRKLAND & ELLIS LLP
      4550 Travis Street
      Dallas, TX 75205
      Tel: (214) 432-5042
      Fax: (214) 972-1771
      lauren.spiwak@kirkland.com

      *Counsel for Defendants Devin S. Anderson
      and Christopher W. Keegan.*

22

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants Devin S. Anderson and

Christopher W. Keegan certifies that counsel conferred with Plaintiff via email, and

Plaintiff opposes the relief requested in this motion.


*/s/ Marianna Chapleau*
Marianna Chapleau

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

/s/ *Marianna Chapleau*
Marianna Chapleau