UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. BALLENTINE,

*Plaintiff,*

v.                                                    Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; META PLATFORMS, INC.; and
CHRISTOPHER W. KEEGAN,

*Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANTS DEVIN ANDERSON AND CHRISTOPHER KEEGAN'S MOTION TO DISMISS (DKT. 26)

### RELIEF REQUESTED

Plaintiff respectfully requests that the Court deny Defendants Devin Anderson and Christopher Keegan's Motion to Dismiss (Dkt. 26) in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should deny Defendants' motion where:

1.     The litigation privilege is an affirmative defense that cannot be resolved at Rule 12(b)(6) where the Second Amended Complaint affirmatively

alleges facts negating the defense, including that the challenged statement was not pertinent to any legal argument in the First Motion (SAC ¶¶ 47–51), and Defendants' own Exhibit 4 confirms that Anderson acknowledged the absence of a CSE violation before filing the Second Motion;

2.    The Second Amended Complaint states a claim for defamation by implication under the framework established in Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008), supported by quantitative textual analysis showing that 85.7% of Background-section references to Plaintiff are paired with CSE terminology while the filing identifies zero content, zero standards, and zero factual basis for the asserted violation;

3.    The Second Amended Complaint states a claim for intentional infliction of emotional distress where Defendants knew Plaintiff is a survivor of childhood sexual abuse before filing the First Motion, and the motion does not address the CSA-survivor disclosure; and

4.    Dismissal with prejudice is not warranted where the privilege determination depends on unresolved factual questions.

**INTRODUCTION**

The Second Amended Complaint ("SAC") alleges three state-law tort claims against Defendants Anderson and Keegan: defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED"). The SAC was filed March 4, 2026 pursuant to the Court's February 25, 2026 order granting leave to amend (Dkt. 18). Defendants' motion (Dkt. 26) seeks dismissal with prejudice of all claims under Rule 12(b)(6).

The motion advances two principal arguments: (1) Florida's litigation privilege bars all claims; and (2) the SAC independently fails to state a claim. Both

2

arguments ask the Court to resolve disputed factual questions on the pleadings. The SAC's allegations, accepted as true, preclude resolution of those questions at this stage.

Two facts the motion does not address are central to Plaintiff's opposition. First, the SAC alleges with specificity that the challenged statement—"a legitimate community standards violation by Ballentine"—was not pertinent to any legal argument presented in the First Motion. SAC ¶¶ 47–51. The First Motion's four legal arguments addressed statute of limitations, causation, Section 230 immunity, and comparator adequacy. None required or depended upon a determination that Plaintiff committed a community standards violation. SAC ¶ 50. The First Motion identified zero content, zero community standards, and zero factual basis for the assertion. SAC ¶¶ 61–63. The motion (Dkt. 26) does not engage with paragraphs 47 through 51.

Second, the SAC alleges that Anderson acknowledged in writing the absence of a CSE violation three days before filing the Second Motion, which still asserted an unidentified "legitimate violation." SAC ¶¶ 37–44. Defendants' own Exhibit 4 confirms this sequence: Anderson stated that Accenture "expressly accepts as true" the absence of a CSE violation and committed to "include language reinforcing this point" in its forthcoming motion. MTD Ex. 4. Three days later, the Second Motion asserted "a legitimate violation of another community standard unrelated to CSE" without identifying any standard, content, or factual basis. SAC ¶¶ 42–44.

Plaintiff respectfully requests that the Court deny the motion in full. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

The litigation privilege is an affirmative defense. Binding Eleventh Circuit precedent holds that a complaint may be dismissed on an affirmative defense only when the complaint's allegations "on their face, show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc). *See also Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (complaints "should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint"). "A plaintiff is not required to negate an affirmative defense in [its] complaint." *La Grasta v. First Union Securities*, 358 F.3d 840, 845 (11th Cir. 2004). Here, the SAC does not merely fail to establish the privilege—it affirmatively alleges facts negating the defense.

**ARGUMENT**

**I.    THE LITIGATION PRIVILEGE CANNOT BE RESOLVED AT RULE 12.**

**A.    The Privilege Is Not Per Se Immunity.**

4

The motion treats the litigation privilege as categorical: statements in court filings are privileged, and that is the end of the analysis. The Eleventh Circuit has rejected that reading. In *Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1219–20 (11th Cir. 2018), the court stated that it does "not think that the Florida Supreme Court is of the view that the litigation privilege offers per se immunity against any and all causes of action that arise out of conduct in judicial proceedings." The privilege must be "assessed in light of the specific conduct for which the defendant seeks immunity," and it "should not be applied in novel ways that serve to 'eviscerate' long-standing sources of judicially available recovery." *Id.* at 1220.

The most recent Eleventh Circuit decision on this issue confirms that the privilege is narrow. *Grippa v. Rubin*, No. 23-11714, 2025 WL 997347 (11th Cir. Apr. 3, 2025). In *Grippa,* the court held that absolute privilege applies only to statements "made during judicial proceedings or in court filings" and only if "related to those proceedings." The court stated that "the fact that a communication relates to pending litigation does not alone shield it from a defamation suit." *Id.* The qualified privilege, by contrast, "is a fact-based defense" that turns on whether the defendant acted with express malice—a determination for the jury. Fridovich v. Fridovich, 598 So. 2d 65, 69–70 (Fla. 1992); DelMonico v. Traynor, 116 So. 3d 1205, 1215 (Fla. 2013).

The Florida Supreme Court reached the same conclusion in *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017), holding that the litigation privilege does not bar certain tort claims and that applying it in such a manner would "eviscerate" long-established causes of action.

The cases the motion relies upon—*Jackson*, *Cherdak*, and *Emergency Recovery*—do not stand for the proposition that any statement in any court filing is absolutely privileged regardless of content. Each of those cases involved statements that were pertinent to the litigation at issue. The question here is whether *this* statement was pertinent to any argument in the First Motion—and that is a fact question the SAC's allegations place squarely before the Court.

## B.     The SAC Alleges Non-Pertinency With Specificity.

Florida's absolute litigation privilege requires that the statement bear "some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). The foundational Florida case, *Myers v. Hodges*, 53 Fla. 197, 44 So. 357, 359 (Fla. 1907), requires that statements be "connected with, or relevant or material to, the cause in hand or subject of inquiry." Statements not pertinent to the proceeding receive only qualified privilege. *DelMonico v. Traynor*, 116 So. 3d 1205, 1218–19 (Fla. 2013).

The SAC alleges, at paragraphs 47 through 51, that the "legitimate community standards violation" assertion was not pertinent to any legal argument in the First Motion. Specifically:

The First Motion did not state that resolving any issue presented required the Court to determine whether Plaintiff violated any specific community standard, and it did not identify any such standard. SAC ¶ 47. The First Motion did not explain how the assertion corresponded to any identified content, standard, or enforcement category other than the child-safety context discussed throughout the filing. SAC ¶ 48. The procedural posture was a Rule 12(b)(6)

6

motion testing legal sufficiency. SAC ¶ 49. The First Motion's legal arguments addressed statute of limitations, causation, Section 230 immunity, and comparator adequacy—none of which required or depended upon a determination that Plaintiff committed a community standards violation. SAC ¶ 50. The "legitimate community standards violation" assertion was not necessary to, and did not support, any legal argument in the First Motion. SAC ¶ 51.

The SAC's textual analysis, set forth in Section K (SAC ¶¶ 55–63), quantifies the absence of any factual predicate for the assertion. Table 1 establishes:

| Metric | Value |
|---|---|
| Total pages of substantive text in First Motion | 17 |
| Instances of Plaintiff's name in same sentence as CSE terminology | 9 |
| Instances concentrated in first 3 pages | 5 |
| Content identified to support "legitimate violation" assertion | 0 |
| Community standard identified to support assertion | 0 |
| Factual basis provided for assertion | 0 |

Across seventeen pages of substantive argument, the First Motion identified zero content, zero standards, and zero factual basis for the "legitimate violation" assertion. SAC ¶¶ 61–63. A statement with no identified factual predicate, supporting no legal argument in the filing, does not bear "some relation to the proceeding" under *Levin*. At minimum, these allegations create a fact question as to pertinency that cannot be resolved at Rule 12.

The motion does not address paragraphs 47 through 51. It does not identify what legal argument the "legitimate violation" assertion supported. It does not explain why the assertion was necessary when none of the four legal arguments (statute of limitations, causation, Section 230, comparators) depended on it. It

does not identify what content Plaintiff posted, what standard he violated, or what factual basis existed for the assertion. The motion argues the statement was "made in a pleading." It does not argue the statement was pertinent to any argument in that pleading.

The motion's reliance on *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004), does not aid Defendants. *Jackson* itself states that the privilege applies at Rule 12 only when "the complaint affirmatively and clearly shows the conclusive applicability of the defense." *Id.* at 1277. The SAC does the opposite—it affirmatively alleges facts showing the privilege does not apply. *See also Spagnuolo v. Insurance Office of America, Inc.*, 356 So. 3d 908 (Fla. 5th DCA 2023) (neither absolute nor qualified privilege attached where the challenged conduct was "completely irrelevant to Appellants' litigation"); *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 245 (Fla. 3d DCA 2011) (privilege "can be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint"); *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004) ("The affirmative defense of qualified immunity presents a fact intensive issue that should ordinarily not be resolved by a motion to dismiss.").

### C.    Even If Qualified Privilege Applies, Express Malice Creates a Triable Issue.

If the Court concludes the absolute privilege does not apply—or that the SAC's allegations create a fact question about absolute privilege—the fallback is qualified privilege. Under Florida law, qualified privilege is defeated by express malice: the defendant's "primary motive in making the statements was the intent

8

to injure the reputation of the plaintiff." *Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992); *DelMonico v. Traynor*, 116 So. 3d 1205, 1215 (Fla. 2013).

The SAC pleads express malice at paragraph 80 based on the following sequence, which Defendants' own Exhibit 4 confirms:

Anderson acknowledged in writing that Accenture "expressly accepts as true" the absence of a CSE violation. SAC ¶¶ 39–41; MTD Ex. 4. Anderson stated Accenture would "include language reinforcing this point" in its forthcoming motion. SAC ¶ 41; MTD Ex. 4. Three days later, Anderson filed the Second Motion asserting "a legitimate violation of another community standard unrelated to CSE"—without identifying any standard, content, or factual basis. SAC ¶¶ 42–44.

Defendants placed the full October 28 email exchange before the Court as Exhibit 4. The Court may read it. It confirms the SAC's allegations at paragraphs 39 through 41. The motion quotes Anderson's statement that he "disagree[d] with Plaintiff's characterization" and that the revised language would be included "as a courtesy." MTD at 5. The motion does not quote or address the "expressly accepts as true" language in its privilege or falsity analysis. The full exhibit speaks for itself, and the sequence—acknowledgment, commitment, pivot without factual predicate—supports the SAC's express-malice theory.

The express-malice inquiry is a jury question. *Grippa*, 2025 WL 997347 ("The question of malice is for the jury and not appropriate for immediate appeal."). It cannot be resolved at Rule 12.

### D.    The Privilege Does Not Apply to All Asserted Claims

The motion argues the privilege applies "across the board," citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384

(Fla. 2007). But *Sun Life* and *Debrincat* have narrowed *Echevarria*. The privilege does not apply in "novel ways that serve to 'eviscerate' long-standing sources of judicially available recovery." *Sun Life*, 904 F.3d at 1220.

The IIED claim rests in part on independent conduct—the Keegan email re-additions—that is separate from the defamatory publication. The privilege analysis for that conduct must be assessed independently. The motion does not address whether the Keegan emails are independently privileged; it addresses only whether they are independently "outrageous." Those are different questions.

## II.    THE SAC STATES A CLAIM FOR DEFAMATION BY IMPLICATION.

### A.    The Legal Framework.

Florida recognizes defamation by implication. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106–08 (Fla. 2008). Defamation by implication arises "not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Id.* at 1106. Truth of the literal statements is not a complete defense—the defendant must prove the defamatory *implication* itself was true. *Id.* at 1108 n.13. *See also Ramos v. Miami Herald Media Co.*, 132 So. 3d 1236 (Fla. 2014).

*Heekin v. CBS Broadcasting, Inc.*, 789 So. 2d 355, 357–58 (Fla. 2d DCA 2001), held that truthful facts juxtaposed to create a false impression stated a claim for defamation by implication. *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990), sets forth the leading national test: if a communication

10

"supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference," the claim proceeds.

### B.    The SAC's Textual Analysis Establishes the Juxtaposition.

The SAC's Section K (paragraphs 55–63) provides the quantitative foundation for the juxtaposition element. The First Motion is a seventeen-page filing containing 26 references to CSE terminology and 41 references to Plaintiff. SAC ¶¶ 55–57. Plaintiff's name appears in the same sentence as CSE terminology nine times. SAC ¶ 58. Five of those nine pairings are concentrated in the first three pages—the Introduction, Summary of Argument, and Background sections. SAC ¶ 59. In the Background section, Plaintiff's name appears seven times; six of those seven references (85.7%) place Plaintiff's name in the same sentence or immediately adjacent sentence as CSE terminology. SAC ¶ 60.

| Metric | Value |
| --- | --- |
| CSE references per page | 1.53 |
| Plaintiff references per page | 2.41 |
| Background section pairing rate (Plaintiff-CSE) | **85.7%** |
| Plaintiff-CSE pairings in first 3 pages | **55.6%** |
| Content identified to support assertion | 0 |
| Community standard identified | 0 |
| Factual basis provided | 0 |

The *Jews for Jesus* juxtaposition test asks whether the defendant "juxtaposes a series of facts so as to imply a defamatory connection between them." 997 So. 2d at 1106. The tables quantify the juxtaposition: Plaintiff's name appears alongside CSE terminology at a rate of 85.7% in the factual narrative, the association is front-loaded in the sections a reader encounters first, and the filing identifies nothing to explain or support the assertion. SAC ¶¶ 61–63. The reader

11

absorbs the CSE-Plaintiff association before reaching legal arguments that do not depend on any violation finding. SAC ¶¶ 47–51. The defamatory implication is that Plaintiff committed a CSE violation or a child-protection-law violation warranting enforcement action. SAC ¶ 77.

The motion does not engage with the SAC's Section K allegations. The concentration and pairing data are unaddressed. The tables are unaddressed. The 85.7% Background pairing rate is unaddressed.

### C.    The Motion's Defenses Do Not Defeat the Claim at Rule 12.

**The "truth" defense.** The motion asserts the statement is "a true statement" but does not identify what was true—what content Plaintiff posted, what standard was violated, or what factual basis existed. The tables' zero rows (0 content, 0 standards, 0 basis) quantify this absence. Under *Jews for Jesus*, truth of literal statements does not defeat a defamation-by-implication claim. The defendant must prove the defamatory *implication* was true. 997 So. 2d at 1108 n.13. The implication is that Plaintiff committed a CSE-related violation. Defendants have identified no factual predicate for that implication—and their own Exhibit 4 (Anderson's October 28 email) confirms that Anderson acknowledged the absence of a CSE violation.

**The "opinion" defense.** The motion cites *Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018), for the proposition that opinions about public documents are not actionable. Under *Turner*, a "pure opinion" is a "comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader." The tables defeat this defense. The factual predicates for the "legitimate violation" assertion are not set forth in the

publication—Table 1 shows zero content, zero standards, zero basis disclosed. SAC ¶¶ 61–63. A statement asserting a "legitimate violation" without disclosing any factual predicate is not a "pure opinion" based on disclosed facts. Whether a reasonable reader would understand the statement as fact or opinion is a question the Court cannot resolve at Rule 12.

**The "seventy times" argument.** The motion argues that the California Complaint itself referenced CSE more than 70 times, so the First Motion's use of CSE terminology in proximity to Plaintiff's name was unremarkable. This argument conflates frequency with editorial function. The California Complaint referenced CSE to allege that CSE was a false pretext for enforcement—Plaintiff's theory was that the designation was fabricated to mask racial discrimination. The First Motion referenced CSE in proximity to Plaintiff's name while asserting a "legitimate violation." Those are opposite editorial functions. The California Complaint said CSE was applied to Plaintiff and it was false; the First Motion said a legitimate violation occurred. Raw frequency comparisons between the two documents are inapt without accounting for the difference in what the CSE references communicate.

The concentration data further distinguishes the filings: 55.6% of all Plaintiff-CSE pairings in the First Motion are in the first three pages, and 85.7% of Plaintiff references in the Background section are paired with CSE terminology. SAC ¶¶ 59–60. The front-loading establishes the CSE-Plaintiff association in the reader's mind before the legal arguments begin—arguments that did not depend on any violation finding. SAC ¶¶ 47–51.

**The motion's truncation of the defamatory statement.** The motion isolates a single sentence and argues it was merely an assessment of the California

Complaint's allegations. The SAC's defamation theory is not about that sentence in isolation. It is about the totality of the First Motion as measured by Section K's textual analysis. The motion does not engage with the SAC's Section K allegations.

## III. THE SAC STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

### A.    The CSA-Survivor Disclosure Transforms the Analysis.

The motion does not mention the CSA-survivor disclosure. This is the most significant omission in the motion.

The SAC alleges: Plaintiff disclosed his status as a childhood sexual abuse survivor in the California Complaint in a footnote. SAC ¶ 25. Anderson, counsel for Accenture, reviewed the complaint containing this disclosure before preparing the First Motion. SAC ¶ 26. The First Motion then paired Plaintiff's name with CSE terminology nine times, concentrated in the first three pages, while asserting a "legitimate violation" with zero identified content, zero identified standards, and zero factual basis. SAC ¶¶ 55–63. Plaintiff suffered severe emotional distress. SAC ¶ 54.

Under Florida law, the outrageousness inquiry considers the defendant's knowledge of the plaintiff's particular vulnerability. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). The motion's cases—*Williams v. Worldwide Flight SVCS.* (racial slurs at work), *Lay v. Roux Labs.* (verbal attacks and racial epithets), *Martinez v. Pavex* (racial slurs and workplace inconvenience)—all involved direct verbal conduct without a specific-vulnerability dimension.

14

The SAC alleges a different set of facts: the filing paired a disclosed CSA survivor's name with child sexual exploitation terminology at a measurable rate while asserting a violation with no factual predicate. The tables show this was not an isolated reference but a quantifiable pattern of association—nine pairings concentrated in narrative sections—directed at a person Defendants knew to be a CSA survivor. SAC ¶¶ 25–26, 55–63.

| Metric | Value |
|---|---|
| Background section Plaintiff-CSE pairing rate | 85.7% |
| Total Plaintiff-CSE pairings | 9 |
| First 3 pages concentration | 55.6% |
| Content identified to support assertion | 0 |
| Community standard identified | 0 |
| Factual basis provided | 0 |

Whether that pattern of conduct is "outrageous" when the knowledge elements are taken as true—as they must be at Rule 12—is a question for the factfinder.

### B.    The Keegan Emails Are Independent IIED Conduct.

The motion invokes Florida's single-action rule to argue that IIED based on the same publication as defamation is barred. That rule applies to the motion-to-dismiss statements—but the SAC's IIED claim also rests on independent conduct that is not part of the defamation count.

The SAC alleges: Keegan re-added Anderson to email communications with Plaintiff. SAC ¶¶ 65–72. Keegan did so after receiving: (a) Plaintiff's written refusal; (b) Plaintiff's stated basis for the refusal (that Anderson is alleged to have caused severe emotional distress); and (c) the February 9, 2026 notice disclosing

Plaintiff's CSA-survivor status and attaching the complaint. SAC ¶¶ 69, 72. Keegan sent both re-addition emails after receiving these materials. SAC ¶ 69.

The motion characterizes this as "standard communications made between attorneys and a pro se attorney during the course of pending litigation proceedings." MTD at 19. The motion addresses what Keegan did but not what Keegan knew when he did it. At Rule 12, the SAC's knowledge allegations must be accepted as true. SAC ¶¶ 103–104.

The single-action rule bars duplicative claims based on the same publication. It does not bar IIED claims alleging conduct beyond the defamatory publication. The Keegan email conduct is separate from the First Motion's publication—different actor, different conduct, different time period, different mechanism of harm. The motion does not address whether the Keegan conduct constitutes independent IIED conduct outside the single-action rule's scope.

## IV. THE CONSPIRACY CLAIM SURVIVES WITH DEFAMATION.

The motion's conspiracy argument is entirely derivative: conspiracy fails because defamation fails. If defamation survives—and it does—the conspiracy argument collapses. *See* SAC ¶¶ 83–92. The SAC alleges specific overt acts in furtherance of the conspiracy: Anderson's filing of the First and Second Motions (SAC ¶ 90) and Keegan's re-addition of Anderson to email communications after receiving Plaintiff's refusal and stated basis (SAC ¶¶ 92–93). The motion does not address these specific overt acts as independent bases for the conspiracy claim.

## V. DISMISSAL WITH PREJUDICE IS NOT WARRANTED.

Defendants' argument for dismissal with prejudice depends on the litigation privilege being resolved conclusively at Rule 12. If pertinency is a fact question—which the SAC's paragraphs 47 through 51 allege—then the privilege cannot be resolved at this stage, and futility has not been established. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001), applies only when "a more carefully drafted complaint could not state a claim." Here, the SAC already states a claim.

The motion cites *Brett v. Biden* and *Jean-Baptiste v. DOJ*. Both involved pro se litigants asserting facially implausible theories—sovereign-citizen arguments, conspiracy allegations against the Department of Justice. This case involves element-by-element pleading, specific factual allegations about the textual characteristics of a particular filing, a documented email exchange in which the filer acknowledged the absence of the implied violation, and a quantitative textual analysis. A court's determination that claims do not ultimately prevail is categorically distinct from a determination that they are "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Pro se pleadings are held to a less stringent standard and should be liberally construed. In the alternative, if any claim is dismissed, dismissal should be without prejudice with leave to amend.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss (Dkt. 26) in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.


Date: March 20, 2026                                    Respectfully submitted,


Marvelle J. Ballentine
Plaintiff, pro se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Telephone: (407) 794-6503
jayballentine@protonmail.com

18

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

Marvelle J. "Jay" Ballentine