# Exhibit 1

Devin S. Anderson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Chris Keegan (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

*Attorneys for Defendant Accenture LLP*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE,<br><br>       Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC. and ACCENTURE LLP,<br><br>       Defendant(s). | Civil Case No. 3:25-cv-07671-CRB<br><br>**DEFENDANT ACCENTURE LLP'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      January 30, 2026<br>Time:    10:00am<br>Judge:  Hon. Charles R. Breyer<br>Dept:    Courtroom 6 – 17th Floor<br>           San Francisco |

ACCENTURE LLP'S MOTION TO DISMISS THE COMPLAINT

CASE NO. 3:25-cv-07671-CRB

**NOTICE OF MOTION AND MOTION TO DISMISS**

Please take notice that on January 30, 2026 at 10:00am, the undersigned will appear before the Honorable Charles R. Breyer of the United States District Court for the Northern District of California, in Courtroom 6 on the 17th Floor located at 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present defendant Accenture LLP's motion to dismiss plaintiff's complaint in its entirety.

The motion is based on this motion, the memorandum of points and authorities below, the declaration of Devin S. Anderson, the pleadings and other papers on file in this action, any oral argument, and any other evidence the Court may consider in hearing the motion.

**RELIEF REQUESTED**

Defendant Accenture LLP requests that the Court dismiss plaintiff's complaint with prejudice.

**STATEMENT OF THE ISSUES TO BE DECIDED**

On September 9th, 2025, plaintiff Ballentine filed this lawsuit claiming that Meta Platforms, Inc. and Accenture LLP engaged in a conspiracy to eliminate Black business owners from Facebook's digital marketplace. Ballentine brings claims under 42 U.S.C. §§ 1981, 1982, 1983 and 1985; and California's unfair competition law, California Business and Professions Code § 17200 et seq. Accenture moves to dismiss the complaint in its entirety. This motion raises the following issues:

1. Whether Ballentine's federal claims are time-barred because of the applicable two-year statute of limitations.

2. Whether all claims should be dismissed as a matter of law because:

   a. The complaint fails to allege facts showing that Accenture caused Ballentine's alleged injuries.

   b. The complaint fails to allege facts showing that Accenture's alleged actions were based on racial animus.

3. Whether the Communications Decency Act bars Ballentine's claims because Ballentine seeks to hold Accenture liable for Meta's publication decisions and its own content-moderation efforts.

4. Whether Ballentine's claim under 42 U.S.C. § 1985(3) should be dismissed for the additional reason that Ballentine has not alleged facts showing a conspiracy between Meta and Accenture.

5. Whether Ballentine is ineligible for UCL relief because he has failed to allege that he lacks an adequate legal remedy for his alleged injuries and has not shown fraudulent activity.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................1

BACKGROUND ........................................................................................................2

LEGAL STANDARD ................................................................................................4

ARGUMENT.............................................................................................................4

I.      BALLENTINE'S FEDERAL CLAIMS ARE UNTIMELY .................................4

II.     BALLENTINE'S FEDERAL AND STATE LAW CLAIMS FAIL BECAUSE HE DOES NOT PLEAD FACTS SHOWING THAT ACCENTURE CAUSED BALLENTINE'S INJURIES OR ACTED OUT OF RACIAL ANIMUS...................................................5

      A.     The Complaint Fails to Allege Facts Showing That Accenture Caused Ballentine's Injuries ...............................................................................5

      B.     The Complaint Fails to Allege Facts Showing That Accenture's Alleged Actions Were Based on Racial Animus ........................................................7

III.    THE COMMUNICATIONS DECENCY ACT BARS BALLENTINE'S CLAIMS ..........12

IV.    BALLENTINE'S SECTION 1985(3) AND UCL CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS .........................................................................14

      A.     Ballentine Has Not Alleged Facts Showing a Conspiracy Between Meta and Accenture ..................................................................................14

      B.     Ballentine Has Not Alleged Facts Showing He Lacks an Adequate Remedy at Law, As Required To State a UCL Claim ...................................................15

      C.     Ballentine Fails To State a Claim Under The UCL's "Fraudulent" Prong.....................16

CONCLUSION .........................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ...................................................................................................11

*Accenture. Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ....................................................................................16

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012) ..................................................................................................7

*Ali v. Intel Corp.*,
2019 WL 1369926 (N.D. Cal. Mar. 26, 2019)...........................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................4, 7, 11

*Astre v. McQuaid*,
804 F. App'x 665 (9th Cir. 2020) ............................................................................................10

*Barrett v. Rosenthal*,
146 P.3d 510 (Cal. 2006) .........................................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ *passim*

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ..................................................................................................12

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..............................................................................................2, 13

*Christian v. Rancho Grande Manufactured Home Community*,
2024 WL 3372687 (9th Cir. 2024) .............................................................................................7

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020)..............................................................................................................5, 7

*Domino v. KFC*,
2020 WL 5847306 (N.D. Cal. Oct. 1, 2020)...........................................................................10

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
830 F. App'x 377 (3d Cir. 2020) ...............................................................................................9

*Earley v. Gen. Mot., LLC*,
   2024 WL 4220018 (S.D. Cal. Sept. 17, 2024) ........................................................................7

*East Coast Test Prep LLC v. Allnurses.com, Inc.*,
   307 F. Supp. 3d 952 (D. Minn. 2018) ....................................................................................12

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) .....................................................................................8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) ...............................................................................13

*Fair v. Rosen*,
   2024 WL 4800693 (C.D. Cal. Aug. 20, 2024) .........................................................................4

*Floyd v. Saber Fitness Hegenberger, LLC*,
   2024 WL 2971669 (N.D. Cal. June 11, 2024) ..........................................................................4

*In re Ford Tailgate Litig.*,
   2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ........................................................................15

*Garrick v. Garrick*,
   2024 WL 3522205 (N.D. Cal. Jul. 24, 2024), *appeal filed*, No. 24-51518 (9th Cir.
   Aug. 22, 2024) ..........................................................................................................................7

*Gueye v. Wells Fargo Bank*,
   2024 WL 1024740 (N.D. Cal. Mar. 7, 2024) ............................................................................8

*Haynish v. Bank of Am., N.A.*,
   284 F. Supp. 3d 1037 (N.D. Cal. 2018) .............................................................................5, 6

*Hernandez v. Clover Flat Land Fill Inc.*,
   2025 WL 2624966, at *2 (N.D. Cal. Sept. 11, 2025) ...............................................................8

*Holomaxx Techs. v. Microsoft Corp.*,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011) .................................................................................13

*Huu Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal Apr. 11, 2017) .........................................................................16

*Jaiyeola v. Apple, Inc.*,
   2024 WL 1329922 (N.D. Cal. Mar. 27, 2024) .....................................................................9, 10

*James v. City of Evanston*,
   2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ..........................................................................7

*Kelsey K. v. NFL Enter., LLC*,
   254 F. Supp. 3d 1140 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018) .................14

*Meniooh v. Two Jinn, Inc.*,
  2021 WL 2987138 (N.D. Cal. Jul. 15, 2021), *aff'd*, 2022 WL 17664005 (9th Cir. Dec. 14, 2022) ........................................................................................................................4

*Menzel v. Scholastic, Inc.*,
  2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)........................................................................9

*Munning v. Gap, Inc.*,
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) .................................................................................15

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
  462 P.3d 461 (Cal. 2020) .......................................................................................................15

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom.*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023)..............................................................................................................14

*In re Qualcomm Antitrust Litig.*,
  2023 WL 7393012 (N.D. Cal. Nov. 7, 2023), *aff'd in part, vacated in part, remanded sub nom.*, *Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025) ..........................................15

*Ray v. Am. Airlines, Inc.*,
  755 F. Supp. 3d 1277 (C.D. Cal. 2024) ..................................................................................9

*Rhynes v. Stryker Corp.*,
  201 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ...............................................................16

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) .................................................................................16

*Sharifi Takieh v. Banner Health*,
  515 F. Supp. 3d 1026 (D. Ariz. 2021), *aff'd sub nom.*, *Takieh v. Banner Health*, 2022 WL 474170 (9th Cir. Feb. 16, 2022) ........................................................................................11

*Sikhs for Just., Inc. v. Facebook, Inc.*,
  697 F. App'x 526 (9th Cir. 2017) ...........................................................................................12

*Snoqualmie Indian Tribe v. City of Snoqualmie*,
  186 F. Supp. 3d 1155 (W.D. Wash. May 16, 2016) ................................................................9

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .................................................................................................15

*Steshenko v. Gayrard*,
  70 F. Supp. 3d 979 (N.D. Cal. 2014) .....................................................................................14

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  2005 U.S. Dist. LEXIS 4875, at *7 (N.D. Cal. Mar. 21, 2005)...............................................4

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................................................4

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)...........................................................................................................5

*Villarroel v. Recology Inc.*,
    775 F. Supp. 3d 1050 (N.D. Cal. 2025) ..............................................................................16

*West v. City of Mesa*,
    128 F. Supp. 3d 1233 (D. Ariz. 2015) ................................................................................9

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ....................................................................16

*Zajonc v. T-Mobile US, Inc.*,
    2025 WL 2419267 (N.D. Cal. Aug. 21, 2025) ...............................................................14, 15

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) .....................................................................................12, 13

*Zapata Fonseca v. Goya Foods Inc.*,
    2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .....................................................................15

**Statutes**

42 U.S.C. § 230(c)(1)...............................................................................................1, 12, 13

47 U.S.C. § 230.................................................................................................................4, 13

47 U.S.C. § 230(b)(4) ...........................................................................................................12

47 U.S.C. § 230(c)(2)..............................................................................................................1

47 U.S.C. § 230(c)(2)(A).......................................................................................................13

47 U.S.C. § 230(f)(4) ............................................................................................................12

Cal. Bus. & Prof. Code § 17200 ............................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Ballentine has not pleaded valid claims. According to the complaint, defendant Meta Platforms, Inc. terminated Ballentine's Facebook advertising account after determining it contained Child Sexual Exploitation ("CSE") material. The complaint also alleges that defendant Accenture LLP—a service provider that supports Meta's content-moderation efforts—assisted in reviewing Ballentine's account. Ballentine theorizes that his Facebook account was terminated because of his race and not because of a CSE violation. But even taking Ballentine's pro se status into account, the complaint simply does not supply the many necessary facts to turn an adverse action on a Facebook account into a far-fetched conspiracy to "eliminate Black business owners from Facebook's digital marketplace." ECF No. 1 ("Compl.") ¶ 1. Ballentine's claims must be dismissed.

First and foremost, Ballentine's federal claims are barred by their respective statutes of limitations. But even if those claims could be heard on their merits, Ballentine has not plausibly alleged facts to show that Accenture—a third-party service provider with no technical ability to terminate an account—caused his injuries. Nor has Ballentine alleged facts that show that Accenture acted with racial animus. Each of these are essential elements of Ballentine's federal-law claims, and the factual predicates for his state-law claims. Ballentine's theory is that, because Accenture's moderators *may* have been able to see his race during the review process, they *must* have recommended a ban based *solely* on his race. But he offers no facts that support that speculative leap. Nothing in complaint either directly or indirectly supports the entirely false allegation that Accenture acted because of Ballentine's race.

Moreover, the Communications Decency Act ("CDA") shields Accenture from liability for its content moderation. Because Section 230(c)(1) of the CDA bars claims against interactive computer service providers based on the removal of content (including accounts) from their services, it follows that third-party content-moderation services should also be immune from liability for those actions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to block access to objectionable material, including efforts to assist others in eliminating objectionable material on their websites. Subjecting Accenture to liability for its support of Meta's content-moderation efforts

---

[1] All case citations are cleaned up with emphasis added, unless otherwise noted.

MEMORANDUM ISO ACCENTURE LLP'S MOTION TO DISMISS     1     CASE NO. 3:25-cv-07671-CRB

would frustrate a foundational premise of the CDA: "to encourage voluntary monitoring for offensive or obscene material" on the internet. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Efforts to combat CSE fall in the heartland of the CDA's protection.

For these reasons and those provided below, the Court should dismiss Ballentine's complaint.

## BACKGROUND[2]

Accenture LLP is a leading global professional-services company that helps businesses, governments, and other organizations build, grow, and optimize their operations. To advance that mission, Accenture offers numerous services, including (among many others) cybersecurity, finance and risk management, and, as relevant here, content moderation.

Accenture has provided content-moderation services for Meta Platforms, Inc. since approximately 2012. Compl. ¶ 25. Meta operates social-media services like Facebook and Instagram that enable millions of users worldwide to connect and share information, including photographs and videos with family, coworkers, friends, and the broader public (if they so choose). Meta also allows users to advertise products and services on its platforms, subject to certain community standards. *See id.* ¶ 51. Users that violate those standards are subject to temporary or permanent bans from Meta's platforms. *See id.* ¶¶ 97–98.

Meta takes significant steps to ensure a safe experience for users. As the host of a wide range of user content across its platforms, Meta creates content policies, *id.* ¶ 35, flags inappropriate material, *id.* ¶ 58, and establishes procedures for review of inappropriate material, *id.* ¶ 89. Meta also actively screens for child-related explicit materials to assist in the ongoing battle against CSE. When Meta discovers an "apparent" violation of child exploitation laws, it reports the violation to the National Center for Missing and Exploited Children ("NCMEC") for further investigation. *Id.* ¶ 32. Meta's content-moderation systems flagged approximately 105.9 million pieces of user content for CSE across Facebook and Instagram in 2022. *Id.* ¶ 28. Of those, Meta confirmed and reported approximately 26 million violations to NCMEC through the organization's CyberTipline. *Id.* ¶ 29.

Accenture's teams assist Meta in moderating content, including by reviewing appeals from users whose material has been flagged as CSE. *Id.* ¶ 89. Meta flags potential violations and sets the rules for

---

[2] Accenture accepts as true the factual allegations in the Complaint solely for the purposes of this motion to dismiss; Accenture does not otherwise concede the truth of any of those allegations.

review, *id.* ¶ 58, and Accenture's teams perform a human review of the Meta-flagged content according to Meta's policies and training, *id.* ¶¶ 35, 89. As the platform operator, Meta "retain[s] exclusive control" over NCMEC reporting, *id.* ¶ 35, holds "override authority" over Accenture's enforcement determinations, *id.* ¶ 90, and "ratifie[s] the outcome" of Accenture's review, *id.* ¶ 111; *see id.* ¶ 46.

Plaintiff Marvelle J. "Jay" Ballentine used his Facebook advertising account to promote his RV-repair-services business and to source work for that business. *Id.* ¶¶ 6, 22, 44. He also used his account to access continuing education materials through the National RV Training Academy's Facebook Group. *Id.* ¶ 42. Ballentine is a Black man. *Id.* ¶ 18. On June 16, 2022, Meta restricted Ballentine's business account, citing violations of Meta's advertising policies or community guidelines. *Id.* ¶ 51. Based on its increased security requirements for business accounts, Meta requested—and Ballentine provided—a phone number for the account. *Id.* Meta approved Ballentine's advertisements later that month. *Id.*

On July 4, 2022, Meta flagged Ballentine's account for a CSE violation and disabled the account. *Id.* ¶ 97. Ballentine appealed, and Meta requested identity verification before processing the appeal. *Id.* ¶¶ 93, 98. Ballentine submitted his passport. *Id.* ¶ 93. On Meta's request, an Accenture moderator reviewed Ballentine's account. *Id.* After Accenture's review, Meta terminated Ballentine's account under its CSE policy. *Id.* Ballentine claims he lost $3,000 in pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. *Id.* ¶ 16.

Ballentine filed this complaint against Meta and Accenture more than three years later on September 9, 2025, claiming that the termination of his Facebook account in 2022 for a CSE violation was part of a scheme to eliminate Black business owners from Facebook's digital marketplace. The complaint does not provide any details about the advertisements Ballentine attempted to post on Facebook before Meta terminated his account. The complaint alleges four counts against Accenture: (1) a violation of 42 U.S.C. § 1981 – interference with right to make and enforce third party contracts; (2) a violation of 42 U.S.C. § 1982 – interference with right to hold and convey personal property; (3) a violation of 42 U.S.C. § 1985(3) – conspiracy to deprive plaintiff of civil rights; and (4) violations of California Business and Professional Code § 17200 et seq – California's unfair competition law. Compl. ¶¶ 94–161. Ballentine "seeks only declaratory and public injunctive relief" for these alleged violations and "does not seek compensatory, statutory, punitive, restitutionary, or any other monetary relief." *Id.* ¶ 19.

MEMORANDUM ISO ACCENTURE LLP'S MOTION TO DISMISS     3     CASE NO. 3:25-CV-07671-CRB

**LEGAL STANDARD**

A motion to dismiss should be granted if the complaint "fails to proffer 'enough facts to state a claim to relief that is plausible on its face.'" *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1132 (N.D. Cal. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**ARGUMENT**

Ballentine's claims against Accenture fail as a matter of law. To begin, Ballentine's federal claims are barred by their respective statutes of limitations. But even if those claims could be heard on their merits, the complaint does not allege facts that show that Accenture caused his injuries or that it acted because of his race. Ballentine's claims are also separately barred by Section 230 of the CDA because they seek to hold Accenture liable for Meta's protected publication decisions as well as Accenture's good-faith efforts to filter objectionable material. And Ballentine's state claims fail for the additional reason that they provide the equitable relief he seeks only where there is no adequate legal remedy available. That is not the case here, where the applicable statutes provide for monetary relief. The Court should dismiss Ballentine's complaint with prejudice.

**I.      Ballentine's Federal Claims Are Untimely**

Ballentine's federal claims are time-barred because they were brought more than three years after the applicable two-year statute of limitations indisputably began to run.

Ballentine's Section 1981, 1982, and 1985(3) claims are governed by California's two-year statute of limitations for personal injury actions. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 2005 U.S. Dist. LEXIS 4875, at *7 (N.D. Cal. Mar. 21, 2005) (applying California statute of limitations for personal injury actions to Section 1981 claim where claim was related to defendant's alleged interference with plaintiff's ability to form contracts); *Fair v. Rosen*, 2024 WL 4800693, at *5 (C.D. Cal. Aug. 20, 2024) (dismissing Section 1982 claim based on two-year statute of limitations); *Meniooh v. Two Jinn, Inc.*, 2021 WL 2987138, at *5 (N.D. Cal. Jul. 15, 2021) (dismissing Section 1985 claim based on two-year statute of limitations), *aff'd*, 2022 WL 17664005 (9th Cir. Dec. 14, 2022). And the cause of action for these civil rights statutes accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Floyd v. Saber Fitness Hegenberger, LLC*, 2024 WL 2971669, at *5 (N.D. Cal.

June 11, 2024). But Ballentine filed his complaint on September 9, 2025—over three years after Meta disabled his account on July 4, 2022. Because Ballentine failed to file his complaint within the appropriate two-year period, each of his federal claims should be dismissed with prejudice.

**II. Ballentine's Federal and State Law Claims Fail Because He Does Not Plead Facts Showing That Accenture Caused Ballentine's Injuries or Acted Out of Racial Animus**

Each of Ballentine's claims—both the federal claims and the claims under the UCL—fail because the fundamental premise of each claim is that Accenture caused Ballentine's alleged injuries and that Accenture acted out of racial animus. Both premises are insufficiently pleaded. First, Ballentine does not allege facts to support his claim that, but for Accenture's review of his account, he would not have suffered his alleged injuries. Second, Ballentine does not allege facts to support his claim that Accenture acted out of racial animus.

**A. The Complaint Fails to Allege Facts Showing That Accenture Caused Ballentine's Injuries**

Each of Ballentine's causes of action fails because the complaint does not allege facts showing Accenture caused his alleged injuries. As for the federal causes of action under Sections 1981, 1982, and 1985(3), "[i]t is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). "In the usual course, this standard requires the plaintiff to show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). The "but for" causation test "supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" facts in his complaint showing but-for causation for each defendant. *Id.* The same is true for Ballentine's UCL claims, which require a showing that the injury was "caused by" the alleged unfair act by the defendant. *See Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1051–52 (N.D. Cal. 2018) (concluding plaintiff lacked UCL standing where injury would have occurred even without defendant's alleged violation). It follows that, as a

predicate to this requirement, a plaintiff must also show that the defendant caused the harm alleged in the plaintiff's UCL claim. *See id.*

Ballentine's complaint does not allege facts that establish that Accenture was a but-for cause of his injuries, and he in fact alleges numerous facts that cut against any such inference. For one, he affirmatively alleges that Meta exercised control over the content-moderation process on the Facebook service at issue. According to the complaint, Meta:

- "set content policies" for its moderation pipeline, Compl. ¶ 35;
- made initial CSE designations, *see id.* ¶ 58;
- "directly trained Accenture moderation teams" and "provid[ed] instruction on Meta's content policies and review procedures," *id.* ¶ 89;
- had "exclusive control" over official CSE reports, *id.* ¶ 35;
- "retained override authority" over and "ratified the outcome" of any Accenture recommendation before actioning an account, *id.* ¶ 111; and
- held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data, *see id.* ¶¶ 45–57.

Accenture, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider. Accenture:

- relied on "Meta-provided content-review tools," *id.* ¶ 90;
- acted "within Meta's enforcement framework," *id.*;
- made "client guided" recommendations, *id.* ¶ 91; and
- was subject to unilateral "override authority," *id.* ¶ 27.

Given these affirmative allegations, it is difficult to see how Accenture could be a but-for cause of Ballentine's alleged injuries. Indeed, by the complaint's own terms, Ballentine's account was flagged for CSE *before Accenture was ever involved* in the review process. *See id.* ¶ 12. When Accenture later reviewed the alleged violation, it allegedly acted according to extrinsic training, policies, and procedures. *Id.* ¶¶ 89, 111. And when Accenture completed its review, the most it could do was issue a recommendation for action. Indeed, as Ballentine acknowledges, Accenture lacked authority to disable his account. *See id.* ¶ 111.

MEMORANDUM ISO ACCENTURE LLP'S MOTION TO DISMISS      6      CASE NO. 3:25-CV-07671-CRB

The complaint's "naked assertion" that Accenture caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678—it *directly contradicts* the very facts on which it relies. Ballentine's complaint fails to plead—and affirmatively disproves—an "essential element[]" of his claims against Accenture: "but for" causation. *Comcast*, 589 U.S. at 332. The Court therefore cannot "draw the reasonable inference that [Accenture] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's complaint should be dismissed.

### B. The Complaint Fails to Allege Facts Showing That Accenture's Alleged Actions Were Based on Racial Animus

Each of Ballentine's claims requires the additional showing that Accenture acted with racial animus, and Ballentine has not alleged facts supporting that conclusion. Ballentine's claims therefore fail as a matter of law and must be dismissed.

Start with Ballentine's federal claims. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just *one* of the reasons behind the defendant's actions, but *the* reason for those actions. 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, lower courts have extended *Comcast*'s but-for requirement to Section 1982 claims. *See, e.g.*, *Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), *cert. denied*, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). And Section 1985(3) claims require a showing that "invidiously discriminatory animus lay behind the conspirators' action." *Garrick v. Garrick*, 2024 WL 3522205, at *11 (N.D. Cal. Jul. 24, 2024), *appeal filed*, No. 24-51518 (9th Cir. Aug. 22, 2024).

Ballentine's state claims also require a showing of unlawful race-based action. The UCL prohibits "unlawful," "unfair," or "fraudulent" business acts or practices. Cal. Bus. & Prof. Code § 17200. Here, each of Ballentine's UCL theories rests on his assertion that Accenture acted with racial animus. *See* Compl. ¶¶ 150–53. They therefore cannot survive without facts to support that conclusion. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim [under the 'unlawful' theory] also fails."); *Earley v. Gen. Mot., LLC*, 2024 WL 4220018, at *6 (S.D. Cal. Sept. 17, 2024) (dismissing plaintiff's "fraudulent" theory and noting in a parenthetical that "[a] UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases

MEMORANDUM ISO ACCENTURE LLP'S MOTION TO DISMISS

7

CASE NO. 3:25-CV-07671-CRB

his claim"); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (when a plaintiff's claim under the unfair prong "overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL," it "cannot survive").

Ballentine's complaint has not alleged facts supporting the threshold requirement of racial animus. According to the complaint, Accenture's human moderators "had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race" during the review process. Compl. ¶ 37. The complaint also claims Accenture was aware that the "automated models" used to facilitate Meta's moderation of content "can be 'wrong' more often for some groups." *Id.* ¶ 38. And it asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] ID." *Id.* ¶ 46. Based on these alleged facts, the complaint hypothesizes—"upon information and belief"—that Accenture "had Plaintiff's government-issued ID . . . visible on screen," *id.* ¶ 46, saw the color of his skin, ¶ *id.* 93, and recommended that Meta affirm his permanent ban because he is Black, *id.* ¶ 112.

The facts alleged in the complaint do not support this conclusion. First, the complaint provides no factual basis for its assertion that Accenture moderators even had *access* to account identifiers. Ballentine effectively concedes this point in his request for relief: Ballentine explains that he does not know (but would like the Court to tell him) "*[w]hether* reviewers could view users' profile photos and government identification images during review." *Id.* ¶ 160. Ballentine thus admits he has no factual basis to believe that Accenture moderators are even capable of discerning the identities of flagged users; it is one of the reasons he brought this claim, after all.

This naked speculation of ill intent is not sufficient to "nudge[] [Ballentine's] claims" of racial discrimination "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Many courts within the Ninth Circuit have dismissed claims under similar circumstances, and this Court should do the same. *See, e.g.*, *Gueye v. Wells Fargo Bank,* 2024 WL 1024740, at *3–*4 (N.D. Cal. Mar. 7, 2024) (dismissing pro se plaintiff's Section 1981 claim for lack of but-for causation because his allegation that defendants "star[ed] down at him" did not support his conclusion that he had "been subjected to racial profiling, racial slurs, derogatory comments, suspicion, unequal treatment and humiliation"); *Hernandez v. Clover Flat Land Fill Inc.*, 2025 WL 2624966, at *2 (N.D. Cal. Sept. 11, 2025) (dismissing plaintiff's

Section 1981 claim because his general allegations that "non-Latino workers receive preferential treatment" and "[d]efendants made racist and derogatory remarks regarding Latinos and immigrants" were insufficient to plausibly support an inference that race was the "but for cause" of the impairment of the contract at issue); *Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1282 (C.D. Cal. 2024) (similar); *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1242 (D. Ariz. 2015) (dismissing Section 1985 claim based on lack of factual allegations suggesting racial animus on the part of defendants), *aff'd*, 708 F. App'x 288 (9th Cir. 2017).

Second, even if the complaint plausibly alleged that Accenture moderators could *access* users' identification photos, Ballentine offers no factual support for his assertion that they *viewed* his photograph. Ballentine's allegation that "the Accenture human reviewer deciding [his] appeal had [his] government-issued photo ID and profile photo visible on screen" is made exclusively on "information and belief." Compl. ¶ 46. This unfounded assertion does not move the needle: as the Third Circuit put it, claims based solely on "information and belief" are another way of saying that a plaintiff "does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 387 (3d Cir. 2020). Ballentine's speculative claims cannot survive a motion to dismiss. *See Ali v. Intel Corp.*, 2019 WL 1369926, at *4 (N.D. Cal. Mar. 26, 2019) (dismissing pro se plaintiff's complaint where allegations of racial discrimination were "conclusory" and made primarily "upon information and belief"), *aff'd*, 797 F. App'x 325 (9th Cir. 2010); *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) ("A conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*.").

Third, even assuming Accenture moderators (1) had the technical ability to access Ballentine's photograph, and (2) viewed Ballentine's photograph, the complaint does not plausibly allege that race was a factor in Accenture's review. Generally, a plaintiff may raise an inference of discrimination by presenting facts showing "that similarly situated individuals were treated more favorably." *Jaiyeola v. Apple, Inc.*, 2024 WL 1329922, at *6 (N.D. Cal. Mar. 27, 2024) (collecting cases). But "[w]hen [a] plaintiff takes this route," he "must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases).

Ballentine does not begin to satisfy this standard.  For one, Ballentine does not offer *any* details or description of the specific post that allegedly led to his account's termination.  His failure to describe the content of his own advertisements for which his account was allegedly terminated renders any comparisons meaningless.  Without that information, the Court cannot determine whether any alleged disparate treatment was based on race or content.  Ballentine's comparator effort fails for this reason alone.

Further, the account type for all five comparators differs from Ballentine's account type.  Compl. ¶¶ 59–63.  Steven Ertlet and "COMP-1"—the only examples for which Ballentine provides any meaningful detail—operate "organizational" and "individual" pages, respectively.  *Id.* at p.10 (table). Ballentine, meanwhile, operated an advertisement account.  *Id.* ¶ 6.  This difference provides reason for the Court to set aside Ballentine's comparisons.  *See Jaiyeola*, 2024 WL 1329922, at *7 (dismissing plaintiff's claim that he was not invited to a work meeting based on his race where he alleged only that employees of other races were invited and did not explain "what occurred in [the meeting], what department hosted [the] meeting, [or] whether a person in [plaintiff's] role would ordinarily be involved in th[e] meeting").

Moreover, Ballentine's list of a handful of comparators does not support his conclusion that Accenture acted with racial animus.  Indeed, the complaint says *nothing* about Accenture's review of those accounts.  It does not, for example, claim that Accenture moderators recommended Meta reinstate the comparators' accounts.  In fact, the complaint does not even *mention* Accenture in its discussion of comparators, except to say that—"on information and belief"—the comparators' cases went through the review system.  Compl. ¶ 59.  Because the complaint does not plausibly allege facts showing disparate treatment on Accenture's part, Ballentine's conclusory assertion that Accenture's "race-aware" review caused his alleged injuries should be rejected.  *Id.* ¶ 125.

Fourth, even assuming Accenture moderators (1) had the technical ability to access Ballentine's photograph, (2) viewed Ballentine's photograph, (3) considered Ballentine's race, and (4) recommended that Meta affirm his ban in the absence of a CSE violation, the complaint does not plausibly allege that racial animus was the but-for cause of that recommendation.  When a complaint "identifies independent non-discriminatory reasons for" the defendant's conduct, any alleged racial animus is not a but-for cause of the plaintiff's injury.  *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020); *see Domino v. KFC*,

2020 WL 5847306, at *2 (N.D. Cal. Oct. 1, 2020) (dismissing claim of discrimination where complaint included facts supporting an alternative explanation for defendant's actions); *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1035–36 (D. Ariz. 2021) (similar), *aff'd sub nom.*, *Takieh v. Banner Health*, 2022 WL 474170 (9th Cir. Feb. 16, 2022).

An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint. And that explanation renders Ballentine's claim of racial discrimination—which requires the court to pile inference upon inference—implausible. According to the complaint, Meta dealt with millions of CSE reports, Compl. ¶ 3, and Meta's enforcement partners (including Accenture) handled thousands of appeals, *id.* ¶ 9. Although Ballentine alleges there was no CSE violation associated with his account, *id.* ¶ 8, and that Meta "cit[ed] no specific policy violation" when affirming his ban, *id.* ¶ 9, he notably fails to allege that there was *no* community standards violation at all. Ballentine does not describe Meta's community standards. Nor does he detail the content of his advertisements. Under these circumstances, the factual allegations of the complaint do not "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. Indeed, "between [the] obvious alternative explanation" for Accenture's alleged recommendation—a legitimate violation—and "the purposeful, invidious discrimination [Ballentine] asks [the Court] to infer, discrimination is not a plausible conclusion." *Id.* at 682.

Ballentine's claims require a showing that racial animus was the reason for Accenture's alleged action. The complaint impermissibly piles speculative inference upon speculative inference: Accenture *may* have been able to see Ballentine's race during the review process, Compl. ¶ 7, so it *must* have recommended a ban based solely on race, *id.* ¶ 123. But because the facts alleged in the complaint do not support this speculative leap, they cannot "nudge[] [Ballentine's] claim[]" of racial discrimination "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Indeed, Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (affirming dismissal of complaint where allegations of racially disparate treatment were made exclusively on information and belief). Ballentine's claims should therefore be dismissed.

### III.    The Communications Decency Act Bars Ballentine's Claims

Ballentine's claims should be dismissed for another independent reason: the CDA shields Accenture from liability for its content-moderation efforts. Section 230(c)(1) provides protection to any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content. 42 U.S.C. § 230(c)(1). And Section 230(c)(2) "provides protection for private blocking and screening of offensive material." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 (9th Cir. 2009). Accenture's content-moderation efforts fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," Accenture qualifies for protection. To conclude otherwise would disincentivize the "utilization of blocking and filtering technologies" on the internet, directly contradicting the codified purposes of the CDA. 47 U.S.C. § 230(b)(4). Accenture is clearly a "user" of an interactive computer service—Meta and its content-moderation services[3]—because Accenture necessarily accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation. Although the CDA does not define or give examples of who qualifies as a "user," California courts have found that "standard rules of statutory construction . . . yield an unambiguous result:" a "user" is simply "someone who uses an interactive computer service." *Barrett v. Rosenthal*, 146 P.3d 510, 526 (Cal. 2006); *see User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as simply "one that uses"). This definition encompasses traditional account holders and content moderators alike. *Barrett*, 146 P.3d at 527 (individual who "used the Internet to gain access to newsgroups where she posted" was a "user" under the CDA); *see East Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018) ("Moderator of third-party content" was entitled to CDA immunity against defamation claims under Section 230(c)(1)).

Accenture is also entitled to protection in its content-moderation role through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), it follows that content-moderation services like Accenture—whose contractual purpose is to assist Meta in its efforts to

---

[3] The Ninth Circuit has repeatedly held that Meta is an interactive computer service. *See, e.g., Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024); *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017).

filter and screen Meta's content, *see* Compl. ¶ 87—are also immune from liability for those actions. *See generally Zango*, 568 F.3d at 1175–76 (holding that a program that filtered adware and malware qualified for protection under the CDA as a "provider" of an interactive computer service and rejecting plaintiff's arguments that the CDA was not intended to reach "companies that provide access to tools or mechanisms for filtering content").

Under Section 230(c)(1), Accenture cannot be held liable for recommending that Meta remove Ballentine's account. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Similarly, under Section 230(c)(2), Accenture cannot be held liable for its "voluntar[y]" and "good faith" actions to recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). As explained, Ballentine has not alleged facts that show Accenture acted in bad faith. Indeed, Ballentine does not (and cannot) say "[w]hether [Accenture's] reviewers could [even] view users'" identification during the review process. Compl. ¶ 160. Ballentine's belief that Accenture's reviewers *may* have been able to see his race during the review process, *id.* ¶ 37, does not support his conclusion that they *must* have acted in bad faith, *id.* ¶ 123. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim against Microsoft under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"). Accenture acted in accordance with Meta's content policies throughout the review process, *see* Compl. ¶ 35, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The complaint does not allege facts that plausibly suggest otherwise.

Affording CDA protection to third-party content-moderation services is consistent with the congressional goal of "encourag[ing] voluntary monitoring for offensive or obscene material" on the internet. *Carafano*, 339 F.3d at 1122. To that end, the Ninth Circuit has explained that "close cases . . . must be resolved in favor of immunity." *Roommates.com,* 521 F.3d at 1174. This liberal construction ensures that the CDA "protect[s] [defendants] not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1175. Accenture's moderation efforts are precisely the type of

conduct the CDA protects. And because this lawsuit seeks to hold Accenture liable for its role in blocking and screening online material, the CDA bars each of Ballentine's claims.

## IV. Ballentine's Section 1985(3) and UCL Claims Fail for Additional, Independent Reasons

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1985(3) and UCL claims cannot survive for additional reasons. First, Ballentine's factual allegations do not support his far-fetched conclusion that Accenture was involved in a Section 1985(3) conspiracy to eliminate Black entrepreneurs from Facebook's marketplace. Second, because Ballentine "has a viable legal damages claim" through his federal claims, he "cannot pursue an equitable claim under the UCL for the same alleged harm." *Zajonc v. T-Mobile US, Inc.*, 2025 WL 2419267, at *2 (N.D. Cal. Aug. 21, 2025). And third, Ballentine's "fraudulent" claim under the UCL fails for the additional reason that he does not plausibly allege that Accenture made *any* representations to him—much less any misrepresentations—about the reason for Meta's termination of his account.

### A. Ballentine Has Not Alleged Facts Showing a Conspiracy Between Meta and Accenture

The complaint does not plausibly allege a *conspiracy* between Meta and Accenture, as is required to support a Section 1985(3) claim. *See O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1185 (N.D. Cal. 2022), *aff'd sub nom.*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023). Once again, the complaint has no factual support for this remarkable assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta engages in "discriminatory targeting" against Black business owners. Compl. ¶ 4. And because Accenture performs "final human review within Meta's enforcement pipeline," Accenture must have made an "agreement" with Meta to discriminate against those business owners. *Id.* ¶¶ 121, 140.

Ballentine's "mere allegation of conspiracy is insufficient to state a claim." *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 998 (N.D. Cal. 2014). Indeed, "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enter., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) (dismissing claim of anticompetitive conspiracy), *aff'd*, 757 F. App'x 524 (9th Cir. 2018); *see Twombly*, 550 U.S. at 559–60 (a complaint's "naked assertion of conspiracy . . . stops short of the line between possibility and plausibility of entitlement

to relief"). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly,* 550 U.S. at 557. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

> **B. Ballentine Has Not Alleged Facts Showing He Lacks an Adequate Remedy at Law, As Required To State a UCL Claim**

Ballentine's UCL claim fails because he does not plead a basic prerequisite for relief. Courts have made clear that the "causes of action established by the UCL" are "equitable in nature." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 462 P.3d 461, 464 (Cal. 2020). And federal courts cannot award equitable relief "when an adequate legal remedy exists." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020). Taken together, these foundational principles require Ballentine to show that he "lacks an adequate remedy at law" before he can obtain relief under the UCL. *Id.* at 844; *see Zajonc*, 2025 WL 2419267, at *2.

Ballentine has not alleged that he lacks an adequate legal remedy for his alleged injuries. Nor could he. Ballentine's chief complaints are the loss of his property and contracts, each of which holds a specific monetary value. *See, e.g.*, Compl. ¶ 44 (claiming $3,000 in lost pending service requests based on defendants' alleged conduct). Further, each of Ballentine's federal claims allows for monetary relief. And when an equitable claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014). Federal courts thus routinely dismiss UCL or other equitable claims at the motion to dismiss stage where, as here, the "plaintiff[] . . . [has] allege[d] other claims presenting an adequate remedy at law." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017); *see Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016).

That Ballentine has affirmatively waived any possible damages claims is of no moment. Compl. ¶ 19. "[T]he failure to pursue, or to successfully pursue, an adequate remedy at law does not make that remedy inadequate." *In re Qualcomm Antitrust Litig.*, 2023 WL 7393012, at *8 (N.D. Cal. Nov. 7, 2023),

*aff'd in part, vacated in part, remanded sub nom.*, *Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025); *see Rhynes v. Stryker Corp.*, 2011 WL 2149095, at \*4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff *may* entitle [him] to an adequate remedy at law, equitable relief is unavailable."). Courts in this district have repeatedly dismissed UCL claims where plaintiffs "d[o] not plead . . . the inadequacy of remedies at law." *Williams v. Apple, Inc.*, 2020 WL 6743911, at \*10 (N.D. Cal. Nov. 17, 2020); *see Huu Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at \*4 (N.D. Cal Apr. 11, 2017). This Court should do the same.

### C. Ballentine Fails To State A Claim Under The UCL's "Fraudulent" Prong

Ballentine's "fraudulent" theory under the UCL fails for the independent reason that he does not allege that he believed Meta's determination that his account contained CSE. To state a claim under the fraudulent prong of the UCL, plaintiffs must prove "*actual reliance* on the defendant's [alleged] misrepresentations or omissions." *Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1062 (N.D. Cal. 2025). But Ballentine does not allege that he relied on Meta's CSE determination; to the contrary, the thrust of Ballentine's entire case is that he disputed that determination. *See* Compl. ¶ 8. What is more, Ballentine never alleges that he "saw, read, or relied on any representations by" *Accenture*. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014). Nor could he. Ballentine does not allege that he was ever in contact with Accenture at any stage of the review process. Because Accenture made *no* representations to Ballentine—much less any misleading representations—Ballentine's UCL claim against Accenture for fraudulent activity fails as a matter of law. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016) (dismissing plaintiff's CLRA and UCL claims for failure to adequately allege reliance on any misrepresentations).

### CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Ballentine's complaint.

Respectfully submitted,


*/s/ Devin S. Anderson*

Devin S. Anderson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Chris Keegan (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

*Attorneys for Defendant Accenture LLP*